2003 ND 109

**JOHN T. JONES CONSTRUCTION CO., Plaintiff, Appellant and Cross–Appellee,**

v.

**CITY OF GRAND FORKS, North Dakota, Defendant, Appellee and Cross–Appellant.**

No. 20020195.

Supreme Court of North Dakota.

July 16, 2003.

Rehearing Denied Aug. 20, 2003.

Thomas R. Olson (argued) and Brian J. Wisdorf (on brief), Olson & Price, Ltd., St. Paul, MN, and Patrick W. Fisher (on brief), Fisher & Olson, Grand Forks, N.D., Michael Francis Daley (appeared), Wheeler Wolf, Bismarck, N.D., for plaintiff, appellant and cross-appellee.

Ronald F. Fischer (argued), Pearson Christensen, Grand Forks, N.D., and Howard D. Swanson (appeared), City Attorney, Grand Forks, N.D., for defendant, appellee and cross-appellant.

NEUMANN, Justice.

[¶ 1]  John T. Jones Construction Company ("Jones") appealed, and the City of Grand Forks cross-appealed, from a judgment adopting an arbitrator's findings, conclusions and order in Jones's breach of contract action against the City. Because judicial review of the arbitrator's decision is governed by the provisions of the Uniform Arbitration Act, N.D.C.C. ch. 32–29.2, and none of the issues presented in this appeal were raised in the district court, we affirm the judgment.

I

[¶ 2]  In November 1998, the City awarded Jones a $6,792,000 construction contract for expansion of its wastewater treatment plant.  Jones submitted its winning bid for the project based on the plans and specifications prepared for the City by

KBM, Inc., and a visit to the construction site by company representatives. The construction contract required the work be substantially completed by November 15, 1999, and provided that substantial completion and final completion dates "are of the essence of the Contract." The contract also contained a liquidated damages clause requiring the contractor to pay the City "$800.00 for each day that expires after the time" specified for substantial completion. Jones encountered soft soils at the construction site which eventually began heaving. Soil also sloughed from the side slopes of the excavation, and Jones claimed the sloughing resulted from unanticipated soil conditions. Jones did not substantially complete work on the project until March 20, 2000.

[¶ 3] After various change orders were approved that both increased and decreased the contract amount, the City paid Jones $6,672,190.74. Jones requested an additional $191,570.59 from the City, claiming the sloughing resulted from changed conditions at the site and caused project delays and additional costs. The City refused to pay the additional amount, claiming the sloughing was caused by improper construction techniques employed by Jones. In May 2000, Jones sued the City for breach of contract. The City counterclaimed, alleging Jones's work did not meet contract specifications and seeking liquidated damages for failure to meet the contractual time limits.

[¶ 4] In April 2001, the parties entered into, and the trial court signed, a "Stipulation and Order for Restricted Arbitration." The parties agreed to submit their disputes to arbitration, and set forth the procedure that would be followed. The parties agreed that the arbitration proceedings would be governed by the North Dakota Rules of Civil Procedure and the North Dakota Rules of Evidence, and that the arbitrator "shall make a reasoned and written determination as to liability and damages that conforms to the substantive law of the State of North Dakota." The parties further agreed that the arbitrator's "decision [would be] entered as an appealable judgment in Grand Forks County District Court, subject to appeal to the North Dakota Supreme Court," and that the arbitrator's

> decision will be subject to appeal to the North Dakota Supreme Court based on the following standards of review:
> Issue of Fact: Clearly erroneous
> Issue of Law: de novo review based upon the same substantive law as stated above

[¶ 5] Following an 8–day hearing, a private arbitrator issued a 33–page decision ruling Jones was not entitled to additional compensation or an extension of the contract time under the differing site conditions clause of the contract because Jones had failed to establish the conditions at the site "were an unknown physical condition, were of an unusual nature, or that these conditions differed materially from those ordinarily encountered ..." The arbitrator further ruled the City was entitled to recover liquidated damages under the contract and damages for Jones's deviation from plans and specifications. After deducting the City's damages from the amount Jones claimed was due under the contract, the arbitrator ordered the City to pay Jones $66,043.22 plus interest. The arbitrator ruled each party would bear its own costs, disbursements and attorney fees.

[¶ 6] Under the Stipulation and Order for Restricted Arbitration, the trial court ordered entry of judgment in accordance with the arbitrator's findings, conclusions and order. Jones appealed the judgment to this Court, claiming the arbitrator erred as a matter of law in ruling Jones did not

provide sufficient evidence of a differing site condition. The City cross-appealed, claiming the arbitrator erred in failing to award the City its costs, disbursements, expert fees and attorney fees.

## II

[¶ 7] Jones argues we should apply a de novo standard of review in this case because the issues raised involve questions of law. The City argues we should apply the clearly erroneous standard of review under N.D.R.Civ.P. 52(a) to the disputed questions of fact and the de novo standard of review to the disputed questions of law, as set forth in the parties' agreement. Both parties contend the standard of review for vacating an arbitration award provided in the Uniform Arbitration Act, N.D.C.C. ch. 32–29.2, does not apply because the trial court approved their Stipulation and Order for Restricted Arbitration and because this case does not involve compelled arbitration.

[¶ 8] The validity of arbitration agreements is recognized by N.D.C.C. § 32–29.2–01, which provides:

*A written agreement to submit any existing controversy to arbitration* or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties *is valid,* enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract. *Sections 32–29.2–01 through 32–29.2–20 also apply* to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement.

(Emphasis added.) Although the first sentence of N.D.C.C. § 32–29.2–01 does not specifically state a written agreement to arbitrate is governed by N.D.C.C. ch. 32–29.2, the second sentence of the statute states the chapter "also" applies to agreements between employers and employees. The only logical interpretation of the statute is that N.D.C.C. ch. 32–29.2 applies not only to compelled arbitration, but applies to a written agreement to submit *any* existing controversy to arbitration.

[¶ 9] Under N.D.C.C. § 32–29.2–11, a court must confirm an arbitration award unless there are grounds for vacating, modifying or correcting the award. The statutory grounds for vacating an arbitration award are set forth in N.D.C.C. § 32–29.2–12(1):

1. On application of a party, the court shall vacate an award if:

   a. The award was procured by corruption, fraud, or other undue means;

   b. There was evident partiality by an arbitrator appointed as a neutral, corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;

   c. The arbitrators exceeded their powers;

   d. The arbitrators refused to postpone the hearing after sufficient cause was shown to postpone it or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to section 32–29.2–05, as to prejudice substantially the rights of a party; or

   e. There was no arbitration agreement and the issue was not adversely determined in proceedings under section 32–29.2–02 and the party did not participate in the arbitration hearing without raising the objection.

   The fact that the relief was such that it could not or would not be granted by a court of law or equity is

not grounds for vacating or refusing to confirm the award.

We will vacate an arbitration award under N.D.C.C. § 32–29.2–12(1)(c) only if it is completely irrational, in that the decision is either mistaken on its face or so mistaken as to result in real injustice or constructive fraud. *Superpumper, Inc. v. Nerland Oil, Inc.*, 2003 ND 33, ¶ 13, 657 N.W.2d 250. An arbitrator's mistake as to fact or law is not a sufficient ground for overturning an arbitration award. *Id.* The public policy underlying the limited judicial review of arbitration awards is stated in *Scherbenske Excavating, Inc. v. North Dakota State Highway Dep't*, 365 N.W.2d 485, 489 (N.D.1985):

> Obviously, the effect of applying the clearly irrational standard of review is to give to the arbitrators every benefit of every doubt. It affords them the widest latitude to exercise their authority and arrive at their decision without the customary restraints of traditional judicial review. It is but a reflection of the strong public policy favoring the arbitration process.

[¶ 10] We have said that "[a]rbitrators, acting under the authority granted to them by a contract or statute, unless expressly limited by the terms of the contract or statute, are the judges of both the law and the facts." *State v. Gratech Co., Ltd.*, 2003 ND 7, ¶ 12, 655 N.W.2d 417. We have not addressed whether parties to an arbitration agreement may contract for a heightened judicial standard of review for an arbitration award that differs from the statutory grounds for vacatur.

[¶ 11] Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16, the federal courts are split on whether parties can contractually expand the judicial standard of review of an arbitration award. Some federal courts, relying on the United States Supreme Court's holding in *Volt Info. Sci-*

*ences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) that the federal act requires courts to enforce arbitration agreements "like other contracts, in accordance with their terms," have allowed parties to contract for higher standards of judicial review. *See Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 293 (3rd Cir.2001) (holding "parties may opt out of the FAA's off-the-rack vacatur standards and fashion their own"); *LaPine Tech. Corp. v. Kyocera Corp.*, 130 F.3d 884, 889 (9th Cir.1997) (holding "[f]ederal courts can expand their review of an arbitration award beyond the FAA's grounds, when (but only to the extent that) the parties have so agreed"); *Gateway Tech., Inc., v. MCI Telecomm. Corp.*, 64 F.3d 993, 997 (5th Cir.1995) (footnote omitted) (holding "[b]ecause these parties contractually agreed to expand judicial review, their contractual provision supplements the FAA's default standard of review and allows for de novo review of issues of law embodied in the arbitration award").

[¶ 12] Other federal courts have disagreed with the ability of parties to contractually expand judicial review of arbitration awards. *See Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 937 (10th Cir.2001) (holding "parties may not contract for expanded judicial review of arbitration awards"); *UHC Mgmt. Co. v. Computer Sciences Corp.*, 148 F.3d 992, 997 (8th Cir. 1998) (stating, in dicta, although parties may choose to be governed by whatever rules they wish regarding how an arbitration itself will be conducted, "[i]t is not clear ... that parties have any say in how a federal court will review an arbitration award when Congress has ordained a specific, self-limiting procedure for how such a review is to occur"); *Chicago Typographical Union v. Chicago Sun–Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir.1991) (stating "[i]f

the parties want, they can contract for an appellate arbitration panel to review the arbitrator's award. But they cannot contract for *judicial* review of that award; federal jurisdiction cannot be created by contract"); *Bargenquast v. Nakano Foods, Inc.*, 243 F.Supp.2d 772, 776 (N.D.Ill.2002) (holding "parties may not contractually expand the scope of judicial review of arbitration awards").

[¶ 13] State courts "have generally held that the parties may not provide in their agreement for court involvement not authorized by the particular state's arbitration act." 21 R. Lord, *Williston on Contracts* § 57:130, at p. 638 (4th ed.2001). For example, in *Chicago SouthShore and S. Bend R.R. v. Northern Indiana Commuter Transp. Dist.*, 289 Ill.App.3d 533, 224 Ill.Dec. 595, 682 N.E.2d 156, 159 (1997), *reversed on other grounds*, 184 Ill.2d 151, 234 Ill.Dec. 395, 703 N.E.2d 7 (1998), the court, interpreting the Illinois version of the Uniform Arbitration Act, stated:

> Subject matter jurisdiction gives the right to hear and determine causes. The subject matter jurisdiction of the trial court to review an arbitration award is limited and circumscribed by statute. The parties may not, by agreement or otherwise, expand that limited jurisdiction. Judicial review is limited because the parties have chosen the forum and must therefore be content with the informalities and possible eccentricities of their choice.

(Citations omitted.) In *Brucker v. McKinlay Transp., Inc.*, 454 Mich. 8, 557 N.W.2d 536, 540 (1997), the court, construing the Michigan version of the Uniform Arbitration Act, said:

> In locating an alternative means of dispute resolution, the parties are generally free to craft whatever method they

choose. All sorts of private conciliation, mediation, and arbitration devices are available. What parties are *not* able to do, however, is reach a private agreement that dictates a role for *public* institutions.

*See also Oakland–Alameda County Coliseum Auth. v. CC Partners*, 101 Cal.App.4th 635, 124 Cal.Rptr.2d 363, 370–71 (2002) (holding "parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by statute"); *Crowell v. Downey Cmty. Hosp. Found.*, 95 Cal.App.4th 730, 115 Cal.Rptr.2d 810, 817 (2002) (holding "[b]ecause the Legislature clearly set forth the trial court's jurisdiction to review arbitration awards when it specified grounds for vacating or correcting awards ..., we hold that the parties cannot expand that jurisdiction by contract to include a review on the merits"); *Dick v. Dick*, 210 Mich. App. 576, 534 N.W.2d 185, 191 (1995) (holding, by agreeing to permit appeal of substantive issues, the "parties have attempted to create a hybrid form of arbitration. However, we find no authority for it. Rather, we conclude that, having invoked binding arbitration, the parties are required to proceed according to the applicable statute and court rule"); *but see Maluszewski v. Allstate Ins. Co.*, 34 Conn. App. 27, 640 A.2d 129, 132 (1994) (stating "[i]f the parties engaged in voluntary, but restricted, arbitration, the trial court's standard of review would be broader depending on the specific restriction," and if the restriction is that the arbitrator's award must conform to the law, the court would be bound to enforce the restriction).

[¶ 14] It is interesting to note that the drafters of the Revised Uniform Arbitration Act, adopted in 2000,[1] voted to exclude from the Act a provision allowing parties to contract for expanded judicial review:

---

1. The 58th Legislative Assembly passed S.B. 2061, which substantially adopts the Revised

The negative policy implications and the uncertain case law outlined above were substantial reasons why the Committee of the Whole adopted a sense-of-the-house resolution at the July, 1999, meeting of the National Conference of Commissioners on Uniform State Laws not to include expanded judicial review through an opt-in provision. This decision not to include in the RUAA a statutory sanction of expanded judicial review of the "opt-in" device effectively leaves the issue of the legal propriety of this means for securing review of awards to the developing case law under the FAA and state arbitration statutes.

Revised Uniform Arbitration Act § 23, Comment B, 7 *Uniform Laws Annotated* 47 (Part I, 2003 Cumulative Annual Pocket Part).

■■■ [¶ 15] We agree with the courts that hold parties to an arbitration agreement cannot contractually expand the scope of judicial review beyond that provided by statute. The Uniform Arbitration Act, N.D.C.C. ch. 32–29.2, provides the sole means for securing judicial review of an arbitration award in the courts of this state, and its provisions must be followed. *See* N.D.C.C. § 32–29.2–17 (stating the "making of an agreement described in section 32–29.2–01 providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under sections 32–29.2–01 through 32–29.2–20 and to enter judgment on an award under the agreement"). When parties to an arbitration agreement seek judicial review of an award, a court may vacate or modify an award only if one of the grounds set forth in N.D.C.C. §§ 32–29.2–12 or 32–29.2–13 is present, regardless of what the arbitration agreement may specify. *See* N.D.C.C. § 32–29.2–11. We conclude the completely irrational standard is the appropriate standard of review in this case.

### III

[¶ 16] Under N.D. Const. Art. VI, § 6, "[a]ppeals shall be allowed from decisions of lower courts to the supreme court as may be provided by law." Section 32–29.2–11, N.D.C.C., provides that "[o]n application of a party, the court shall confirm an award, unless, within the time limits imposed by sections 32–29.2–01 through 32–29.2–20, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 32–29.2–12 and 32–29.2–13."

■■ [¶ 17] In this case, neither party applied to the district court to vacate or modify the arbitration award. Under the Stipulation and Order for Restricted Arbitration, the parties agreed the arbitrator's decision would be "entered as an appealable judgment ... subject to appeal to the North Dakota Supreme Court." In effect, both parties sought confirmation of the arbitrator's award.

■■ [¶ 18] On the granting of an order confirming an award, a "judgment or decree must be entered in conformity with the order and be enforced as any other judgment or decree." N.D.C.C. § 32–29.2–14. Under N.D.C.C. § 32–29.2–19(1)(c) and (2), parties may appeal to this Court from an order confirming an award,

Uniform Arbitration Act (2000) and repeals N.D.C.C. ch. 32–29.2 effective August 1, 2003. *See* 2003 N.D. Sess. Laws ch. 280. Section 3 of the Act provides:

1. This Act governs an agreement to arbitrate made after July 31, 2003.
2. This Act governs an agreement to arbitrate made before August 1, 2003, if all the parties to the agreement or to the arbitration proceeding so agree in a record.
3. After July 31, 2005, this Act governs an agreement to arbitrate whenever made. Until August 1, 2005, chapter 32–29.2, as it existed on July 31, 2003, applies to agreements made after June 30, 1987.

and the "appeal must be taken in the manner and to the same extent as from orders or judgments in a civil action." "It is axiomatic that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from judgment." *Bard v. Bard,* 380 N.W.2d 342, 344 (N.D.1986). The Uniform Arbitration Act, N.D.C.C. ch. 32–29.2, does not give this Court authority to review an arbitration award that has not been subject to review in the district court. Because the parties neither raised nor preserved any issues in the district court, we are unable to review the issues on the merits of the arbitration award raised by the parties on appeal. Consequently, under N.D.C.C. § 32–29.2–11, we must affirm.

### IV

[¶ 19]   The judgment is affirmed.

[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.