# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
May 29, 2025 Session

## BERKELEY RESEARCH GROUP, LLC v. SOUTHERN ADVANCED MATERIALS, LLC

**Appeal by Permission from the Court of Appeals
Chancery Court for Shelby County
No. CH-22-1433-II Jim Kyle, Chancellor**

———————————————————

**No. W2023-00720-SC-R11-CV**

———————————————————

This case addresses whether the Uniform Arbitration Act confers subject matter jurisdiction on Tennessee courts to confirm an arbitration award when the parties' arbitration agreement specified that arbitration would occur in another state. Berkeley Research Group, LLC and Southern Advanced Materials, LLC entered into a contract which provided that any dispute would be resolved by arbitration in Pennsylvania, not Tennessee. A dispute arose and the parties entered arbitration, which resulted in an award to Berkeley. Berkeley sought to confirm the arbitration award in Shelby County Chancery Court. The trial court confirmed Berkeley's arbitration award and entered judgment. The Court of Appeals reversed, finding that while the trial court had subject matter jurisdiction, it lacked personal jurisdiction over Southern. We find that Tennessee courts lack subject matter jurisdiction to confirm an arbitration reward when the parties agreed arbitration would occur in another state. As a result, the trial court lacked jurisdiction to confirm an award resulting from an arbitration the parties agreed would occur in Pennsylvania. We vacate the judgments of the lower courts and dismiss the petition to confirm the award.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Vacated; Case Dismissed

DWIGHT E. TARWATER, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, SARAH K. CAMPBELL, and MARY L. WAGNER, JJ., joined.

David Mendelson and Adam M. Nahmias, Memphis, Tennessee, and Ryan C. Williams and Jessica L. Dagley, Chicago, Illinois, for the appellant, Berkeley Research Group, LLC.

Philip B. Seaton, Memphis, Tennessee, for the appellee, Southern Advanced Materials, LLC.

Harrison Gray Kilgore, Nashville, Tennessee, for the amicus curiae, Attorney General for the State of Tennessee.

# OPINION

## I.

Berkeley Research Group, LLC ("Berkeley") and Southern Advanced Materials, LLC ("Southern") entered into a contract in 2019 in which Southern agreed to pay Berkeley for its consulting services. Their contract included an arbitration clause that would govern if a dispute arose between the parties. The arbitration clause stated:

> This Agreement shall be interpreted and controlled by the laws of the state of Delaware. Any controversy, dispute, or claim between [Southern] on the one hand and [Berkeley] and Expert on the other hand of whatever nature arising out of, in connection with, or in relation to the interpretation, performance or breach of this agreement, including any claim based on contract, tort, or statute, ("Claims") shall be resolved at the request of any party to this agreement, by final and binding arbitration, administered by Judicial Arbitration & Mediation Services, Inc. (JAMS), or its successor entity, pursuant to its Comprehensive Arbitration Rules & Procedures (Streamlined Arbitration Rules & Procedures), and judgment upon any award rendered by the arbitrator may be entered by any State or Federal Court having jurisdiction thereof. Any such arbitration shall take place exclusively in Philadelphia, PA.

Berkeley later alleged Southern breached the contract by not paying Berkeley for its services, and the parties underwent arbitration. Arbitration occurred via Zoom on October 26 and 27, 2021, while the arbitrator was located in Philadelphia, Pennsylvania. The arbitrator awarded Berkeley $433,815.34 on August 2, 2022.

On October 17, 2022, Berkeley filed a petition to confirm the arbitration award in Shelby County Chancery Court. Southern filed a motion to dismiss, arguing that the court had neither personal jurisdiction nor subject matter jurisdiction. The chancery court denied Southern's motion to dismiss and entered judgment confirming the award. Southern appealed.

The Court of Appeals upheld the chancery court's finding that it had subject matter jurisdiction to confirm the arbitration award. *Berkeley Rsch. Grp., LLC v. S. Advanced*

- 2 -

*Materials, LLC*, No. W2023-00720-COA-R3-CV, 2024 WL 3738456, at *3 n.4 (Tenn. Ct. App. Aug. 9, 2024) (finding court had subject matter jurisdiction under Tennessee Code Annotated section 29-5-323), *perm. app. granted*, (Tenn. Jan 27, 2025). But the Court of Appeals found that the chancery court lacked personal jurisdiction over Southern because Southern did not have sufficient contacts with Tennessee and reversed and remanded for dismissal. *Id.* at *6–8.

Berkeley applied for permission to appeal to this Court. We granted review and asked the parties to brief two additional issues: (1) whether Tennessee courts have subject matter jurisdiction over the action although it arises from an arbitration that, by agreement, was to occur in another state, and (2) if subject matter jurisdiction exists, whether Southern consented to personal jurisdiction in Tennessee by contractually agreeing that the arbitration judgment "may be entered by any State or Federal Court having jurisdiction thereof."

II.

Whether a court has subject matter jurisdiction is a question of law that this Court reviews de novo. *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013) (citing *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012)).

III.

Subject matter jurisdiction concerns a court's authority to adjudicate the matter before it. *Northland Ins. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Tennessee courts derive their subject matter jurisdiction either from the constitution or from statute. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *see also New v. Dumitrache*, 604 S.W.3d 1, 14–15 (Tenn. 2020) ("Statutes or constitutional provisions confer and define a court's subject matter jurisdiction, and parties to litigation cannot confer or expand subject matter jurisdiction by consent or waiver."). Because a court may not adjudicate a matter over which it has no subject matter jurisdiction, subject matter jurisdiction is a threshold issue that may be raised at any time and is not subject to waiver. *Houghton v. Malibu Boats, LLC*, --- S.W.3d ---, No. E2023-00324-SC-R11-CV, 2025 WL 2971436, at *6 n.12 (Tenn. Oct. 22, 2025). We therefore address it first. In this case, our inquiry begins and ends with subject matter jurisdiction.

In Tennessee, jurisdiction to confirm an arbitration award is wholly a creature of statute—the Uniform Arbitration Act ("UAA"). Tennessee adopted the UAA in 1983. Prior to its adoption, Tennessee courts, like many state courts, were reticent to recognize the validity of arbitration agreements or were even directly hostile to arbitration. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 602–03 (Tenn. 2013) (first citing *Buraczynski v. Eyring*, 919 S.W.2d 314, 317 (Tenn. 1996); and then citing *Cavalier Ins. v.*

- 3 -

*Osment*, 538 S.W.2d 399, 403 (Tenn. 1976)); Timothy J. Heinsz, *The Revised Uniform Arbitration Act: Modernizing, Revising, and Clarifying Arbitration Law*, 2001 J. Disp. Resol. 1, 1 (2001); *see, e.g.*, *St. Paul Fire & Marine Ins. v. Kirkpatrick*, 164 S.W. 1186, 1189 (Tenn. 1914) ("Arbitrations, even of the limited kind under examination, to some extent oust the courts of their jurisdiction of causes, or have a tendency to do so, and should not be encouraged . . . ."). The UAA's adoption "ensure[d] the enforceability of private agreements to arbitrate," and arbitration became a common and widely accepted means of dispute resolution. *Morgan Keegan*, 401 S.W.3d at 603; *see also Buraczynski*, 919 S.W.2d at 317 (recounting history of arbitration's acceptance).

The UAA was later revised and published as the Revised Uniform Arbitration Act ("RUAA"), and Tennessee adopted the RUAA in 2023. The RUAA "governs an agreement to arbitrate made on or after July 1, 2023" or "an agreement to arbitrate made before July 1, 2023, if all the parties to the agreement or to the arbitration proceeding so agree in a record." Tenn. Code Ann. § 29-5-304(a)–(b) (2024). Thus, the UAA applies to agreements to arbitrate made before July 1, 2023, unless the parties agree otherwise. *Id.*

We first determine whether the UAA or the RUAA governs this case. The parties entered into the contract containing the arbitration clause in 2019 and underwent arbitration based on the contract in 2021 and 2022. Berkeley petitioned to confirm the resulting arbitration award in 2022. All of these events occurred before the RUAA's start date of July 1, 2023. Moreover, the parties never agreed that the RUAA would govern in place of the UAA. *See* Tenn. Code Ann. § 29-5-304(b). Consequently, the UAA governs here. *See* Tenn. Code Ann. § 29-5-304.

We next determine what limits the UAA places on Tennessee courts' subject matter jurisdiction. Tennessee Code Annotated section 29-5-302 addresses jurisdiction and states:

> (a)     A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract . . . .
> (b)     The making of an agreement described in this section *providing for arbitration in this state confers jurisdiction on the court* to enforce the agreement under this part and *to enter judgment on an award thereunder.*

Tenn. Code Ann. § 29-5-302 (2012) (emphasis added). Thus, an agreement that provides for arbitration in Tennessee confers jurisdiction on our courts to enter judgment on a resulting arbitration award. *See id.*

While this Court has not previously had an opportunity to apply Tennessee Code Annotated section 29-5-302 to analogous facts as those presented here, our Court of Appeals and numerous courts of other jurisdictions have. We are mindful of Tennessee Code Annotated section 29-5-320's prompt to consider the law of other UAA jurisdictions when interpreting the UAA: "This part shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." Tenn. Code Ann. § 29-5-320 (2012); *cf.* Tenn. Code Ann. § 29-5-330 (2024). While section 29-5-320 is not "an inexorable command to make up a scorecard of the states that have accepted and rejected a particular interpretation of a provision of the Uniform Arbitration Act and then to follow the majority view without further discussion or analysis," we nevertheless do not interpret the UAA in a vacuum. *Morgan Keegan*, 401 S.W.3d at 612. We start with our Court of Appeals' interpretation of Tennessee Code Annotated section 29-5-302 before we continue to the decisions of other UAA states.

In *Hogan v. Hogan*, No. W2008-01750-COA-R3-CV, 2009 WL 2632755, at *7 (Tenn. Ct. App. Aug. 27, 2009), the Court of Appeals found that under Tennessee Code Annotated section 29-5-302, the trial court lacked subject matter jurisdiction to enforce an arbitration agreement when the agreement mandated arbitration in the state of Washington. The court found that the arbitration agreement must at a minimum allow for arbitration to occur in Tennessee for the court to have subject matter jurisdiction. *Id.* at *6–7 (citing *Dewitt v. Al-Haddad*, No. 89-394-II, 1990 WL 50727, at *1, *6 (Tenn. Ct. App. Apr. 25, 1990)). But because the parties contracted for arbitration to occur in Washington, there was "no ambiguity or forum provision that provide[d] that the parties would ever arbitrate in Tennessee." *Id.* at *7.

In *Brown v. Styles*, No. M2010-02403-COA-R3-CV, 2011 WL 3655158, at *3 (Tenn. Ct. App. Aug. 18, 2011), the Court of Appeals reiterated that section 29-5-302 "is the *sole* source of the court's subject matter jurisdiction to confirm arbitration awards." (Emphasis added.) Unless section 29-5-302's requirements are met, "the courts lack subject matter jurisdiction to confirm arbitration awards." *Id.*

Other jurisdictions that have adopted the UAA have "almost unanimous[ly]" held that "if the parties in their agreement designate a place for the arbitration proceeding, then that State has exclusive jurisdiction to determine the validity of an arbitrator's award." Revised Unif. Arb. Act § 26 cmt. 3 (Unif. L. Comm'n 2000); *see, e.g.*, *State ex rel. Tri-City Constr. Co. v. Marsh*, 668 S.W.2d 148, 152 (Mo. Ct. App. 1984) ("Every state that has considered the question of jurisdiction to confirm the award has focused on the place of arbitration and not the locus of the contract."); *Gen. Elec. Co. v. Star Techs., Inc.*, Civ.A. No. 14923, 1996 WL 377028, at *6 (Del. Ch., July 1, 1996); *Chi. Southshore & S. Bend R.R. v. N. Ind. Commuter Transp. Dist.*, 703 N.E.2d 7, 9–11 (Ill. 1998); *Tru Green Corp. v. Sampson*, 802 S.W.2d 951, 953 (Ky. Ct. App. 1991); *Kearsarge Metallurgical Corp. v. Peerless Ins.*, 418 N.E.2d 580, 583–84 (Mass. 1981). These courts' rationale was "to

prevent forum-shopping in confirmation proceedings and to allow party autonomy in the choice of the location of the arbitration and its subsequent confirmation proceeding." Revised Unif. Arb. Act § 26 cmt. 3. Indeed, due to the prevalence of the rule, the RUAA now states that an agreement to arbitrate in one state "confers exclusive jurisdiction" on that state's courts to confirm an arbitration award. *Id.* § 26(b); *see also* Tenn. Code Ann. § 29-5-327 (2024).

We agree with the *Hogan* court that under the plain language of Tennessee Code Annotated section 29-5-302, the agreement must "provid[e] for arbitration in this state" for Tennessee courts to have subject matter jurisdiction to confirm an arbitration award. Tenn. Code Ann. § 29-5-302; *see Hogan*, 2009 WL 2632755, at *7. This requirement is clearly satisfied when the agreement states that the arbitration will occur in Tennessee. It is clearly *not* satisfied when the agreement states that arbitration will occur in another state.[1]

Here, the arbitration clause provided for arbitration in Pennsylvania alone. Arbitration in Tennessee was not a possibility. As a result, the arbitration clause did not "provid[e] for arbitration in" Tennessee, and the trial court lacked subject matter jurisdiction to confirm the arbitration award. *See* Tenn. Code Ann. § 29-5-302.

While we are not bound by the holdings of other jurisdictions, this interpretation of section 29-5-302 likewise promotes the principle of comity with other jurisdictions that have interpreted this section under the UAA. *See* Tenn. Code Ann. § 29-5-320 (2012); *see, e.g.*, *Marsh*, 668 S.W.2d at 152; *Gen. Elec. Co.*, 1996 WL 377028, at *6; *Chi. Southshore*, 703 N.E.2d at 9–11; *Tru Green Corp.*, 802 S.W.2d at 953; *Kearsarge Metallurgical*, 418 N.E.2d at 583–84.

Berkeley offers several arguments as to why the trial court had jurisdiction to confirm the arbitration award; none avail. We address the most salient arguments.

Berkeley argues that current Tennessee Code Annotated section 29-5-327—a provision of the RUAA—says only that our courts have *exclusive* jurisdiction when the contract provides for arbitration in Tennessee, not that our courts lack jurisdiction over arbitration awards in other situations. *See* Tenn. Code Ann. § 29-5-327 (2024). However, the UAA, not the RUAA, governs this case. The corresponding provision of the UAA— Tennessee Code Annotated section 29-5-302 (2012)—does not contain the word "exclusive" on which Berkeley's argument hinges. Instead, section 302 provides that "[t]he making of an agreement described in this section providing for arbitration in this state *confers jurisdiction* on the court *to* enforce the agreement under this part and to enter

---

[1] We do not decide whether Tennessee courts have jurisdiction when the contract potentially provides for arbitration in Tennessee (e.g., the contract is silent as to the arbitration forum or lists Tennessee as one of several potential forums for arbitration), yet the arbitration occurs in another state. Those facts are not presented here.

judgment on an award thereunder." Tenn. Code Ann. § 29-5-302(b) (2012) (emphasis added). Section 302 identifies only one circumstance in which Tennessee's courts have jurisdiction to confirm an arbitration award, and it does not exist here. There must be something in the statute to grant jurisdiction; subject matter jurisdiction over out-of-state arbitrations is not acquired by default. *See Meighan*, 924 S.W.2d at 639; *New*, 604 S.W.3d at 14–15.

Berkeley points to *DeSage v. AW Financial Group, LLC*, No. 71919, 2020 WL 1952504, at *4 (Nev. Apr. 22, 2020) (unpublished disposition), to support its position. But *DeSage* interpreted the RUAA, not the UAA. To the extent it discussed the UAA, that discussion hurts, not helps, Berkeley's position. *DeSage* noted that under the UAA, courts have "uniformly held that the UAA provides the sole source of a state court's jurisdiction over arbitration matters" and "[i]f there is no agreement to arbitrate in the state, then that state has no jurisdiction." *Id.* *DeSage* then found—in what appears to be a minority position among UAA jurisdictions—that the RUAA compels a different result because of its addition of the word "exclusive." *See id.* Even if that minority position is correct, it does not help Berkeley because this case is governed by the UAA.

Berkeley also argues that Tennessee Code Annotated section 29-5-323 (2024) (section 29-5-312 under the UAA) grants our courts subject matter jurisdiction to confirm arbitration awards in addition to section 29-5-327. Section 29-5-312 under the UAA states:

> Upon application of a party, the court shall confirm an award, unless, within the time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 29-5-313 and 29-5-314.

Tenn. Code Ann. § 29-5-312 (2012). However, Berkeley admitted during oral argument that the only authority in any jurisdiction interpreting this section to convey subject matter jurisdiction is the Court of Appeals in its decision below. *See Berkeley*, 2024 WL 3738456, at *3 n.4. We have surveyed other jurisdictions and likewise have not found another jurisdiction interpreting this section in the UAA or RUAA as a vehicle for subject matter jurisdiction. Were we to interpret this section in the manner Berkeley proposes, there would be no limit to Tennessee courts' subject matter jurisdiction over any arbitration award made within the United States.

Berkeley also argues that denying subject matter jurisdiction "runs directly afoul" of policy favoring arbitration under the Federal Arbitration Act ("FAA") and "give[s] rise to a whole host of preemption issues under the FAA." If this were the case, the whole country has run afoul. Nearly every court interpreting the jurisdictional section of the UAA or RUAA has found that the arbitration agreement must provide for arbitration in the state in order for that state's courts to have subject matter jurisdiction over confirmation of the

award. *See, e.g.*, *Marsh*, 668 S.W.2d at 152; *Gen. Elec. Co.*, 1996 WL 377028, at \*6; *Chi. Southshore*, 703 N.E.2d at 9–11; *Tru Green Corp.*, 802 S.W.2d at 953; *Kearsarge Metallurgical*, 418 N.E.2d at 583–84. Moreover, the FAA creates no preemption issue here because the UAA provisions at issue are procedural rather than substantive. *See Morgan Keegan*, 401 S.W.3d at 606. The UAA's jurisdictional provision does not "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" because Berkeley could have sought to confirm the award in a court with subject matter jurisdiction.[2] *Id.* (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)).

Finally, Berkeley argues that Tennessee's chancery courts have concurrent jurisdiction with the Uniform Arbitration Act to confirm arbitration awards because the General Assembly has granted chancery courts general jurisdiction over contested amounts greater than $50. *See* Tenn. Const. art. VI, § 8; Tenn. Code Ann. § 16-11-103 (2021). We disagree that Tennessee Code Annotated section 16-11-103 grants chancery courts subject matter jurisdiction over matters in which our courts would not otherwise have jurisdiction.

Because we find that the Court lacks subject matter jurisdiction over this case, we do not decide whether Southern had sufficient contacts with Tennessee to establish personal jurisdiction or contractually consented to personal jurisdiction in Tennessee.

## CONCLUSION

The Uniform Arbitration Act confers subject matter jurisdiction on our courts to confirm arbitration awards when the arbitration agreement provides for arbitration in Tennessee. Because the parties agreed the arbitration would take place in Pennsylvania, the arbitration agreement did not provide for arbitration in this state. Consequently, the chancery court lacked subject matter jurisdiction to confirm the arbitration award. We vacate the judgments of the lower courts and dismiss the petition. Costs of this appeal are taxed to Berkeley Research Group.

_____
DWIGHT E. TARWATER, JUSTICE

---

[2] Pennsylvania is also an RUAA jurisdiction. Like Tennessee, it codified RUAA section 26 so that an agreement to arbitrate in Pennsylvania confers exclusive jurisdiction on Pennsylvania courts to confirm a resulting award. *See* 42 Pa. Cons. Stat. § 7321.27 (2019) ("An agreement to arbitrate providing for arbitration in this Commonwealth confers exclusive jurisdiction on the court to enter judgment on an award under this subchapter.")